**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

FILED
2008 Oct 09 PM 03:48
CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 06-30601 |
| | ) | |
| G & C Foundry Company, Ltd., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER
### DENYING MOTION TO STRIKE PLAN BALLOT

This case is before the court on the Motion of the Official Committee of Unsecured Creditors ("the Creditors' Committee") for Order Pursuant to Bankruptcy Code Section 1126(c) Striking Plan Ballot of United Electrical, Radio and Machine Workers of America Local 714 ("Union") [Doc. # 758] ("Motion"), Debtor's response [Doc. # 797], and the Supplement to the Motion [Doc. # 793] and reply [Doc. # 798] filed by the Creditors' Committee. The court held a hearing on the Motion that Debtor's counsel and counsel for the Creditors' Committee attended in person. Having considered the Motion, the briefs in support of the parties positions, and the arguments of counsel, for the reasons that follow, the Motion will be denied.

Two competing Chapter 11 liquidation plans (the "Plans") have been proposed in this case, one by Debtor and one by the Creditors' Committee. The court approved the respective disclosure statements filed by Debtor and by the Creditors' Committee as containing adequate information within the meaning of 11 U.S.C. § 1125(a) and established procedures for solicitation and tabulation of votes to accept or reject the Plans. Based on the balloting agent's tabulation of ballots accepting or rejecting each plan, neither Debtor's

proposed plan nor the plan proposed by the Creditors' Committee received the requisite acceptance under 11 U.S.C. § 1126(c) to meet the confirmation standard of 11 U.S.C. § 1129(a)(8) and (10). The Union cast its ballot as a creditor in the principal amount of $150,000, accepting Debtor's plan and rejecting the plan proposed by the Creditors' Committee. The ballot agent counted the Union's ballot as one cast by a holder of a Class 4 claim, as defined under the Plans. The Creditors' Committee seeks an order striking the Union's ballot. If the Union's ballot is stricken, the Creditors' Committee plan will have received the acceptance necessary to meet the confirmation standards of § 1129(a)(8) and (10).

Both Plans set forth the same classification of claims. Classes 1, 2 and 3 include secured claims and priority unsecured claims and are designated as unimpaired under the Plans. Class 4, "Unsecured Claims," is defined by both Plans as "Unsecured Claims not otherwise classified under the plan." [Doc. # 675, p.10; Doc. # 672, p. 11]. Both Plans designate Class 4 claims as impaired and provide that holders of allowed Class 4 claims will receive a pro rata share of the liquidation assets after holders of allowed claims in Classes 1, 2, and 3 are paid in full. [Doc. # 675, p. 10-11; Doc. # 672, p. 10, 12]. Both Plans further provide that all claims of creditors are placed in the described classes "for all purposes, including voting on, confirmation of, and distribution under, this Plan." [Doc. # 675, Art. 3, § 3.01; Doc. # 672, Art. III, § 3.01]. Based on the designations of impairment and lack of impairment in the Plans, ballots were sent only to Class 4 claimants. *See* 11 U.S.C. § 1126(f).

Section 1126(a) of the Bankruptcy Code governs acceptances of Plans and provides that "[t]he holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." The Creditors' Committee does not dispute that the Union holds an unsecured claim and it does not dispute the amount of the claim stated in the Union's ballot. While § 1126(c) and (e) permit exclusion from determining plan acceptance of the vote of any entity whose acceptance or rejection was not procured in good faith or in accordance with the provisions of title 11, no evidence has been presented and no argument has been advanced that the Union's ballot was not cast in good faith or that its vote was not procured in accordance with title 11. The court finds no statutory basis under § 1126 for disallowing the Union's ballot and striking it as requested by the Creditors' Committee.

Moreover, there is also no dispute that the Union's claim is not otherwise classified under the plan. Nevertheless, the Creditors' Committee argues that the Union is not entitled to vote as a Class 4 creditor. The Creditors' Committee's argument is based primarily upon an August 7, 2006, "Sharing Agreement" ["Agreement"] between the Creditors' Committee and the Union. This Agreement was reached after unsuccessful negotiations between Debtor and the Union regarding Debtor's proposal to modify the

2

collective bargaining agreement ["CBA"] covering its Union employees. The Creditors' Committee met with Union representatives and entered into negotiations to see if the impasse between the Debtor and the Union could be broken. The Agreement is the result of those negotiations. Debtor, however, is not a party to the Agreement.[1]

Under the Agreement, the Union agreed that certain modifications of the CBA would be made and the Creditors' Committee agreed that the Union would share in distributions to be made to general unsecured creditors as follows:

a. General unsecured creditors shall receive 100% of the first one million dollars ($1,000,000) in distribution on account of general unsecured claims in the Debtor's chapter 11 case;

b. . . . [T]he next $1,000,000 will be shared as follows

    80% to Unsecured Creditors = $800,000
    20% to Union Membership   = $200,000

c. After the second $1,000,000 in distributions is paid . . . all such further distributions will be shared as follows:
    70% to Unsecured Creditors
    30% to Union Membership until repaid in full, without interest or Penalty

d. Balance thereafter to unsecured creditors.

[Doc. # 793, Ex. A]. The Agreement further provides that the Creditors' Committee and the Union agree "that the terms of this sharing Agreement shall be incorporated into and made a part of any plan of reorganization confirmed in the Debtor's chapter 11 case." [*Id.* at 3].

The Creditors' Committee filed a "Notice" of the Agreement, [Doc. # 162], however, the Agreement itself was not previously filed with the court and the court's approval of the Agreement was never sought.[2] Although both Disclosure Statements of the Debtor and of the Creditors' Committee disclose the terms of the Agreement, neither Plan provides for payment of the Union's unsecured claim and other Class 4 claims as set forth above. Nevertheless, the Creditors' Committee argues that, in light of the Agreement, the Union's claim carries different distribution rights than those of other Class 4 unsecured claimants. Because 11 U.S.C. § 1122(a) provides that "a plan may place a claim or an interest in a particular class only if such

---

[1] Debtor did, however, enter into an agreement with the Union resolving Debtors' renewed motion under 11 U.S.C. § 1113 for an order authorizing rejection of the CBA. In an agreed order, the court approved Debtor's withdrawal of the § 1113 motion and the Memorandum of Agreement that was filed as an attachment to the order. [*See* Doc. # 174]. The Memorandum of Agreement sets forth the agreed upon modifications of the CBA. [*Id.*] It does not set forth any agreement as to treatment of the Union's claim in any Chapter 11 plan or otherwise.

[2] The Creditors' Committee supplemented the instant Motion to include a copy of the Agreement. [Doc. # 793, Ex. A].

3

claim or interest is substantially similar to the other claims or interest of such class," the Creditor's Committee argues that the Union's claims may not be placed in the same class as other general unsecured claims. For this reason, the Creditors' Committee contends that the ballot agent improperly considered the Union's ballot as a Class 4 vote in favor of Debtor's Plan. The court disagrees.

The ballot agent was required to tabulate the ballots according to the classes defined in the Plans. He was not free to create additional classes not otherwise set forth in the Plans or in the approved disclosure statements. Likewise, although the Creditors' Committee suggested at the hearing on the Motion that it would amend its Plan to create a separate class that would include the Union's claim and the terms of the Agreement regarding distributions to the Union, the court must decide the instant Motion based on the Plans as written that are before the court, not on some potential amended plan that may be proposed in the future.[3] The Union's claim falls squarely under the definition of a Class 4 claim in the Plans, that is, an unsecured claim not otherwise classified under the Plans. The Plans expressly provide that this classification is for all purposes, including for the purpose of voting on the Plans.

To the extent that the Creditors' Committee believes the Plans do not provide the proper classification for the Union's claim, a motion to strike the Union's ballot and prevent it from voting is not the appropriate procedural mechanism to address the issue. Although the Motion before the court is captioned as one brought pursuant to § 1126(c), at the hearing on the Motion, the Creditors' Committee stated that its argument is actually an § 1122(a) argument. *See also* Fed. R. Bankr. P. 3013. Rule 3013 does not specify a time for filing a motion for determination of classes of claim pursuant to § 1122. The 1983 Advisory Committee Note to Rule 3013 clearly contemplates, however, that the utility of the procedure offered by the rule is in addressing classification issues prior to the expense of the disclosure and plan confirmation process. At this point in this proceeding there are two competing Plans setting forth claim classifications under § 1122. Those two plans have already been voted on. Improper classification issues may certainly be raised by objection to confirmation of a plan to the extent not addressed previously, *see, e.g.*, *In re Crosscreek Apts.*, 213 B.R. 521 (Bankr. E.D. Tenn. 1997); *In re Dow Corning Corp.*, 244 B.R. 634 (Bankr E.D. Mich. 1999); *Beal Bank S.S.B. v. Waters Edge Ltd. P'ship*, 248 B.R. 668 (D. Mass. 2000), although the court recognizes the incongruity at the very least of a plan proponent objecting to confirmation of its own plan. The distinction at issue is between striking a ballot accepting or rejecting a plan as proposed and challenging the substantive contents of a plan as being in compliance with title 11. Given the plain terms

---

[3] The court takes no position as to the propriety under 11 U.S.C. § 1127 of the Creditors' Committee amending its own Plan now.

of § 1126, the distinction is material and not one that will be overlooked by the court in the name of expedience. In this case, on the basis of the Plans as proposed, the Creditors' Committee's motion would deny the Union any right to vote in contravention of both § 1126 and the plain terms of the Plans.

Alternatively, the Creditors' Committee argues that the court should strike the Union's ballot because the Union's claim is unimpaired and, therefore, it is conclusively presumed that the Union has accepted both Plans. *See* 11 U.S.C .§ 1126(f) (providing that "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan. . ."). However, the Plans clearly state that Class 4 claims are impaired. And there is no dispute that the Union will not receive the full amount of its claim, regardless of whether its claim is "subordinated" to other unsecured claims under the Agreement as the Creditors' Committee argues and to the extent the Agreement can be so construed.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the Motion [Doc. # 758] be, and hereby is, **DENIED.**